TuRI/ey, J.
delivered the opinion of the court.
Thomas C. Porter was elected sheriff of Giles county, in November 1831, and entered into bond for the performance of his duties, with John Porter, John Buchanan, Richard H. Allen, Ananias Oliver, Nathaniel C. Nye, Robert Yarborough and R. Oliver as his securities. He was re-elected to the same office in 1833, and entered into bond for the performance of his duties, with Daniel Goodrum, William C. Mayfield, Samuel S. Smith, Richard Briggs, Ananias Oliver, and Robert B. McLaurin as his sureties. On the 8th day of October, 1833, an execution came to the hands of said Porter, as sheriff, in favor of Thomas Sherrell against James Perry and others, for the sum of $1177 21 and cost, tested of the August term, 1833, of the circuit court of Giles, and returnable to the February term, 1834. This execution Porter failed to return as required by law, and at the February term, 1835, of said court, judgment was rendered against him as sheriff, and the persons named as his sureties in the bond of November 1831, in favor of said Sherrell, for his neglect of duty, for the sum of $782 21 and cost. Upon this judgment an execution was issued on the 23d of April, 1835, which came to the hands of the coroner of Giles county, and was by him levied on two mides, six head of horses, twenty five head of cattle, four yoke of steers, one wagon and cart, and five thousand pounds of hemp, and returned, “levied too late to sell.” This property is proven to have belonged to Thomas C. Porter, the sheriff, and to have been worth the sum of $1240. On the 1st of May, 1839, Sherrell caused a suit to be commenced in the name of Wm. Carroll, governor, for his use, against the persons named in the bond of November 1833, as sureties for said Thomas C. Porter, sheriff, with the view to charge them, for his neglect of duty in not returning the execution above mentioned in favor of Sherrell against James Perry and others, which suit he prosecuted to judgment at the April term, 1842, of the circuit court of Giles, and to reverse which, the defendants have prosecuted this writ of error.
On the trial, the judge charged the jury, that the judgment of the circuit court of Giles, rendered at its February term, *429 1835, in favor of Sherrell against Porter and his sureties was void, because trie defalcation for which Porter was liable, was committed by him at a period of time, for which these sureties were not responsible, but for which the sureties on the bond sued on, were — and that of consequence the levy made by the coroner on Porter’s property was no satisfaction of the demand against him, and therefore no bar to the pending suit.
This proposition involves the whole matter in dispute, and its solution will determine the case.
That the sureties in the first bond were not responsible for Porter’s neglect in returning the execution in favor of Sherrell, to the February term, 1834, of the Giles circuit court, admits of no controversy, for their liability had ceased previous to that period of time, and the liability of the sureties in the second bond been substituted in their stead; and the fact that the execution had come to his hands previously to his re-election can make no difference, for it does not appear that he collected the money, but only neglected to return it, as he was bound to do by law, which act of nonfeasance was committed in his second term of office, for which his first securities cannot be held responsible. As all these facts appear upon the face of the judgment, it necessarily follows, that it is void as against the sureties. But does it follow that it is also void as against Porter, the principal? It is argued that it is, that the judgment is entire, and being void as to some of the parties is necessarily void as to all. We deem it unnecessary to enter into a minute investigation of the common law doctrine, as to the nature of judgments, what defects will vitiate them, when (if ever) they may be sustained in part and set aside in part.
All the learning upon that subject resting upon the inflexible principle, that things not perfectly homogeneous shall not form the subject matter of a judgment, that persons not interested in the subject matter, in the same character, and upon the same principles, shall not be joined as parties, and that a failure to recover a judgment against one, shall be a failure as to all, it necessarily followed, that a judgment both as to its subject matter and its parties was so entire, that it could in no point be severed, and that if it were bad in part, that it would be bad in the *430 whole. But such modifications, have been made by statute in more modern times, to suit the conveniences of trade and commerce and the many varied, relations arising out of them, producing such a variety of shade of interest in the same transaction, and amalgamating them together in the same remedy, that cases are constantly arising in which parties who would not have been permitted under any circumstances by the common law to join in their action, now do so readily, and subject matters of controversy, joined only by a collateral thread, and which the common law pleader would never have thought of uniting, are now readily embraced by the same declaration, so that it would be found not only injurious to, but destructive of the rationale of correct pleading to apply the same restricted principle to them.
Such are our joint suits against the makers and endorsers of bills of exchange, and promissory notes, all our judgments on motion, against sheriffs, coroners and constables and their sureties and our judgments on motion against sureties for appeals from an inferior to a superior tribunal.
In all these cases some of the parties are directly liable, and some collaterally. Suits might be brought and judgments obtained in all cases against those who are directly bound, without noticing those who are collaterally bound, but to avoid circuity and expense, the contrary course is permitted.
You may take your judgment against a drawer of a bill of exchange alone. You may take it against him jointly with the endorsers; a failure to obtain it against the endorser, does not prevent your having it against the maker, though they be sued jointly; it is time the statute giving the joint remedy also gives the several; but it may be well questioned, whether the courts would not have given it without, for there is no connection in their liability, or in the nature of the proof to charge them. In the cases of motions against sheriffs and other officers, they are the principals, responsible for their own conduct. You may take judgment against them, without noticing their securities, and it is valid — but for greater security judgment is taken against the sureties. If the judgment against them shall be void, how shall .it vitiate the judgment against the principal? can it make that *431 bad which, would have been good, if there had been no judgment against them? Surely not; a void judgment is no judgment; it is no protection; all persons acting under it are trespassers, and the case must stand as if there had been no judgment against them.
This principle is invariably practised upon in writs of error from inferior courts. If judgments have been erroneously entered against securities, they are dischai-ged, and the judgment affirmed against the principals; and so it would be if the judgment were void as to the security, and this can be only upon the ground, that its being void as to the security does not make it void as to the principal, for if it were void in toto, it could not be affirmed in part.
We think that the judgment rendered on motion against Porter in favour of Sherrill, at the February term, 1835, for neglecting to return the execution against James Perry and others at the February term, 1834, of the Giles circuit court, was a good and valid judgment against him, though void as against his sureties. It being a good judgment, the levy of an execution thereon by the coroner upon a sufficiency of Porter’s property to pay it, is a satisfaction, and constituted a good defence to the present action.- Judgment reversed and case remanded.